UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHARLES BLEVINS,**

      **Plaintiff,**

                                       Civil Action 2:18-cv-740
                                       Judge Michael H. Watson
     **v.**                                 Magistrate Judge Chelsey M. Vascura

**REBECCA CASTO,** *et al.***,**

      **Defendants.**

## REPORT AND RECOMMENDATION

      Plaintiff, Charles Blevins, a state inmate who is proceeding without the assistance of counsel, brings this action against employees of Chillicothe Correctional Institution under 42 U.S.C. § 1983. This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** this action pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted. This matter is also before undersigned for consideration of Plaintiff's Motion to Amend (ECF No. 7), Motion for Counsel (ECF No. 2), and Motion for Injunctive Relief (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Motion to Amend (ECF No. 7) and **DENY AS MOOT**

Plaintiff's Motion for Counsel (ECF No. 2), and Motion for Injunctive Relief (ECF No. 3).

**I.**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1], which provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \*   \*   \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule

---

[1]Formerly 28 U.S.C. § 1915(d).

8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**II.**

In his Complaint, Plaintiff organizes his allegations into five claims, followed by a section he titles "relief," which identifies the relief he requests for each of the five preceding claims. The undersigned reviews each of Plaintiff's claims in turn before consideration of Plaintiff's Motion to Amend (ECF No. 7).

**A.     Plaintiff's Claim One: Access to Relief / Request for Post-Conviction Relief**

Plaintiff identifies his first claim for relief as "Denial of meaningful Access to Court." (ECF No. 1-1 at p. 5.) Within this claim, Plaintiff appears to allege that Defendant Rebecca Casto's refusal to provide him with copies of his medical records in June 2013 resulted in the denial of his requests for post-trial relief. Plaintiff explains that he was convicted of murder in 2002 and that prison records generated prior to the murder would show that he was suffering from post-traumatic stress disorder ("PTSD"). According to Plaintiff, the state court would have granted his request for post-trial relief and afforded him a new trial based upon these prison medical records showing that he was suffering from PTSD when he committed the murder. Plaintiff indicates that his attorney requested and obtained the records at issue in August 2016, but they were difficult to read "due to light copying tactics." (*Id*. at p. 7.) He further alleges that Warden Amy Hamilton hand-delivered a copy of his medical records to him in January 2017, but these records "were no longer extensive as was the first copy [his attorney] received." (*Id*.) He generally alleges that Defendant Rebecca Casto acted "in concert" with the warden's office "to obstruct justice." (*Id*.)

In terms of relief, Plaintiff asks this Court to "decide the claims within his post-conviction petition" and review his motions for reconsideration pending in state court and that

"he be placed back in the position to hear his claims for a new trial." (*Id*. at p. 13.) He also seeks monetary damages for the delay caused to his post-conviction proceedings, as well as money from nonparty Nurse Daily for retaliation, who he alleges caused him pain and suffering that led to his development of PTSD. Finally, he generally requests $5,000 for retaliation.

Plaintiff's Claim One fails to state a claim on which relief may be granted for a number of reasons. First, even assuming Defendant Casto's alleged refusal in June 2013 to provide him with copies of his medical records could form the basis of a § 1983 claim, such a claim would be time barred. Ohio Revised Code § 2305.10 creates a two-year statute of limitations for 42 U.S.C. § 1983 claims. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). This statute of limitations begins to run on 42 U.S.C. § 1983 claims when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005). The event about which Plaintiff complains occurred in 2013, and thus, cannot form the basis for a timely § 1983 claim.

Second, Plaintiff has failed to allege facts sufficient to state an access to courts claim. Prisoners have a First and Fourteenth Amendment right of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 351-54 (1996). To state a claim that a state actor has violated that right, a plaintiff must allege an "actual injury" and official conduct that is more than mere negligence. *See Harbin-Bey v. Rutter,* 420 F.3d 571, 578 (6th Cir. 2005); *Gibbs v. Hopkins,* 10 F.3d 373, 379 (6th Cir. 1993). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In addition, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the

litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id*. at 416. Here, Plaintiff' has failed to plead facts showing that Defendant Casto's failure to provide him with documents in 2013 resulted in the dismissal of a nonfrivolous legal claim or otherwise prevented him from pursuing a viable claim. Plaintiff generally references a 2015 brief filed by the State of Ohio, asserting that this brief demonstrates the "mental health records" he requested "would have satisfied criminal rule 33(b)." (Pl.'s Compl. 13, ECF No. 1-1.) Criminal Rule of Procedure 33(b), upon which Plaintiff relies, provides as follows: "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b). Given that Plaintiff was convicted of murder in 2002, any motion Plaintiff might have filed in 2013, when he requested his medical records, would have been untimely. Thus, even if Plaintiff's § 1983 access-to-courts claim were not time barred, it fails on the merits.

Finally, although Plaintiff styles his claim as a § 1983 claim, he asks this Court to "decide the claims within his post-conviction petition" and order him a new trial. (Pl.'s Compl. 13, ECF No. 1-1.) To obtain such relief, Plaintiff's sole remedy in federal Court is habeas corpus. *See Skinner v. Switzer*, 131 S.Ct. 1289, 1293 (2011) ("Habeas is the exclusive remedy . . . for the prisoner who seeks immediate or speedier release from confinement." (internal quotation marks and citation omitted)). Thus, to pursue any such direct challenge to the duration of his incarceration, Plaintiff must file a petition for a writ of habeas corpus that complies with Rule 2(d) of the Rules Governing Habeas Corpus Cases Under Section 2254.

6

For all of these reasons, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Claim One pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted.

B.    **Plaintiff's Claim Two:  Medical Indifference**

In his second claim for relief, Plaintiff says "a mental health administrator and staff liaison failed to test and treat by ignoring a prescribed treatment plan to treat [his] PTSD and delusional disorder in the year of 1991 and August 2000."  (Pl.'s Coml. 8, ECF No. 1-1.) Plaintiff alleges that Defendants John and Jane Doe have admitted that their failure to test him for PTSD was due to their neglect, which was attributable to prison overcrowding.  He further alleges that Defendants Rebecca Casto and Corby Free "in concert with unknown members of prison staff, distorted and falsified [his] mental heath records seeking to cover up facts."  (*Id.*). Plaintiff also alleges that he wrote a letter to the victim's family, but that the letter did not make it to the family.  According to Plaintiff, if he had known of his mental illness or had been properly treated, he may not have committed murder or may not have been charged with murder. Plaintiff requests a jury trial to determine the proper relief.

Plaintiff's Claim Two, like Claim One, is time barred.  Plaintiff alleges that Defendants John and Jane Doe acted with deliberate indifference in violation of the Eighth Amendment when, in 1991 and 2000, they negligently failed to follow a prescribed treatment plan and test him for PTSD.  Plaintiff has failed to allege any facts upon which the Court could rely to conclude that Plaintiff only recently discovered Defendants' deliberate indifference.  Thus, these events cannot form the basis for a timely § 1983 claim.

Even if Claim Two was not time barred, it fails on the merits because Plaintiff has not sufficiently alleged a claim for deliberate indifference.  It is well established that "[t]he Eighth

Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id*. Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011); *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." (citations omitted)).

The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If

the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)). Moreover, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id*. at 591 (quotation marks and citation omitted).

Nothing in Plaintiff's Complaint or its attachments reveals that Defendants John and Jane Doe—or any other prison official—was aware of facts from which they could infer that Plaintiff faced a substantial risk of serious harm and that they consciously disregarded that risk. To the contrary, Plaintiff allegation that Defendants John and Jane Doe were "negligent" due to overcrowding issues, accepted as true, shows that Defendants John and Jane Doe did not act with the requisite state of mind. *See Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) ("[T]he plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'" (quoting *Santiago*, 734 F.3d at 591)). Because Plaintiff has not alleged that Defendants John and Jane Doe acted with the requisite state of mind, his medical indifference claims against them fail on the merits.

For all of these reasons, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Claim Two pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted.

**C.    Plaintiff's Claim Three:  Access to Courts, Retaliation, Property Loss, and Conspiracy**

Under this claim for relief, Plaintiff alleges that in March 2018, Defendant Rebecca Casto and Defendant Timothy Shoop conspired to order Plaintiff and all other inmates to report to the

9

prison yard, so that they could vandalize inmates' properties in retaliation for another's inmate's fight with a correctional officer. Plaintiff alleges that during this "mass punishment," nonparty Officer Moore opened his secured locker and attempted to steal his legal documents. (Pl.'s Compl. 9, ECF No. 1-1.) Plaintiff alleges that Defendant Shoop gave notice that he would "return to repeat these acts." (*Id*.) Plaintiff says that when he asked for the unit sergeant to return his property, the sergeant responded that the items were contraband unless ownership could be proven. Plaintiff obtained one bag of items because he was able to prove ownership because his name was identified on a c.d. player and states that the sergeant released other bags with food in them without proof of ownership. Plaintiff alleges that he did not, however, see "his blue net back of legal documents in the bags." He represents that he is now missing his mental health records and legal work product. Plaintiff appears to allege that nonparty Officer Moore, Defendants Rebecca Casto and Tim Shoop, and nonparty Nurse Moore conspired to provide this "mass punishment" in retaliation for another inmate's drug trade, gang involvement, and fighting with another officer. (*Id.* at 9, 15.) In terms of relief, Plaintiff asked for an order compelling Defendants to provide him with another complete copy of his mental health records and that he be paid minimum wage for five hours per day for all of the "stolen legal material, work product, and lost strategies," from May 13, 2014, when he filed his motion for a new trial. (*Id*. at 14-15.)

Plaintiff's allegations in Claim Three fail to state an access to courts claim. As with Claim One, Plaintiff has failed to sufficiently allege an actual injury.

Plaintiff has also failed to allege facts sufficient to state a retaliation claim. The elements of a First Amendment retaliation claim are as follows:

> "(1) the plaintiff engaged in protected conduct; (2) and adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

*Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2000). Plaintiff has not sufficiently alleged the first required element, that he engaged in protected conduct. Rather, according to Plaintiff, the retaliatory acts about which he complains occurred as a result of another inmate's drug trade, gang involvement, and fighting with another officer. (*See* Pl.'s Compl. 9, 15, ECF No. 1-1.)

It is unclear whether Plaintiff is seeking to pursue a due process claim premised upon his alleged property loss in light of his allegations that a nonparty correctional officer released bags of food that had been taken during the cell searches. Any such claim would, however, fail because Plaintiff has not sufficiently alleged the inadequacy of the remedies available under Ohio law. *See Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986) and *Hudson v. Palmer*, 468 U.S. 517 (1984). In *Paratt*, the Supreme Court held that the existence of adequate post-deprivation state remedies eliminates any due process claim arising from the negligent deprivation of a prisoner's property. 451 U.S. at 539–44. The *Hudson* Court extended *Parratt's* application to all § 1983 due process claims involving deprivation of property, regardless of whether the deprivation is negligent or intentional. *Hudson*, 468 U.S. at 533–36. *Cf. Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004) ("If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury."). Following *Parratt* and *Hudson*, the United States Court of Appeals for the Sixth Circuit held that in a § 1983 case

11

"claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir. 1983). Where a plaintiff fails to do so, dismissal for failure to state a claim is appropriate. *See, e.g.*, *Gibbs v. Hopkins*, 10 F.3d 373, 377-78 (6th Cir. 1993) (dismissal of procedural due process claim upheld where the plaintiff had "not pled or shown that [the state] judicial remedies are inadequate . . ."); *Ruiz v. Fisher,* No. 96-4212, 1998 WL 661139, at *5 (6th Cir. Sept. 2, 1998) (concluding that the plaintiff had failed to state a claim of either intentional or negligent deprivation of property where he had not pled "that state remedies for redressing the wrong [were] inadequate"). Here, Plaintiff has failed to sufficiently plead that the post-deprivation tort remedies available to him under Ohio law are inadequate to adjudicate his property-loss claims as required under *Parratt* and *Vicory*. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson*, 468 U.S. at 534–36) ("State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses."). Thus, to the extent Plaintiff seeks to assert a due process claim arising from the seizure of property from his cell, that claim must be dismissed for failure to state a claim.

Finally, Plaintiff has failed to sufficiently plead a conspiracy claim. "A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011) (internal citation and quotations omitted). To state an actionable civil conspiracy claim, a plaintiff must allege the following elements: "(1) a single plan existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to [the

plaintiff]." *Id.* A plaintiff may not rely on mere speculation and conjecture to establish the existence of an agreement. *Moore v. City of Paducah,* 890 F.2d 831, 834 (6th Cir. 1989) (in the summary judgment context).

Plaintiff makes few specific allegations in support of his conspiracy claim. He alleges that Defendant Shoop "in concert with [D]efendant Rebecca Casto, ordered [him] and all other E-2 unit inmates to the prison yard." (Pl.'s Compl. 9, ECF No. 9.) He alleges that while they were in the yard, other correctional officers took his property. He also appears to allege that upon request, his property was later returned with the exception of his legal documents, which the nonparty correctional officer speculated might be in the possession of another inmate. Plaintiff concludes that Defendant Casto's "presence during this mass punishment is suspect at best." (*Id*. at 10.) The undersigned concludes that Plaintiff's allegations constitute mere speculation and conjecture and cannot support a claim Defendants Casto and Shoop conspired to violate his constitutional rights. Plaintiff has failed, therefore, to assert a conspiracy claim.

For all of these reasons, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Claim Three pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted.

**D.     Plaintiff's Claim Four:  Equal Protection**

According to Plaintiff, he was denied meaningful access to the courts and equal protection of the law when he was denied his requests for medical records. He explains that only rich inmates can afford to hire an attorney or physician to get their records released. He alleges that Defendants Rebecca Casto and Cory Free denied him equal protection of the law when, in 2013, they created an "unwritten policy" that he was required to get a court order to directly release his medical records. (Pl.'s Compl. 6-7, ECF No. 1-1.) He alleges the "evil intentions" of

their actions is apparent by the light copying of the records" he received and "the manipulation of the policy to revisit the situation every (12) months to further delay" relief he seeks. In terms of relief, Plaintiff asks the Court to amend the language of Ohio Revised Code § 5120.21.

Plaintiff's Claim Four, like Claims One and Two, are time barred. As with Claim One, Claim Four is premised upon Defendants' alleged refusal to release Plaintiff's medical records to him in 2013. Thus, these allegations cannot form the basis for a timely § 1983 claim.

Even if Plaintiff's Claim Four was not time barred, it must be dismissed for failure to state a claim. To state an equal protection claim, a prisoner need only allege sufficient plausible facts to show "that a state actor intentionally discriminated against [him] because of membership in a protected class." *Henry v. Metro. Sewer Dist.,* 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks omitted), *abrogated in part on other grounds by King v. Harwood*, 853 F.3d 568, 580 n. 4 (6th Cir. 2017), *reh'g en banc denied*, 853 F.3d 568 (6th Cir. 2017), *petition for cert. filed*, (Aug. 15, 2017) (No. 17-260); *see also Herron v. Harrison,* 203 F.3d 410, 417 (6th Cir. 2000); *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 255-56 (1995)). Indigent prisoners, however, are not a protected class subject to the Equal Protection Clause. *Harris v. McRae*, 448 U.S. 297, 323 (1980) (poverty is not a suspect class for an equal protection claim); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) (indigent prisoners are not a suspect class). Thus, Plaintiff's claim for relief for violation of the Equal Protection Clause must be dismissed for failure to state a claim.

For all of these reasons, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Claim Four pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted.

### E. Plaintiff's Claim Five: Due Process, Retaliation, and 8th Amendment

As best as the Court can discern, in Claim Five, Plaintiff asserts that he was retaliated against and his due process and Eighth Amendment rights were violated because nonparty Chief Inspector and others failed to timely respond to a grievance he filed, failed to hold a protective custody hearing he requested, issued a conduct report against him, and sent him to a prison in Mansfield, Ohio, which he alleges places a hardship in his family visitors. In terms of relief, in addition to punitive damages, Plaintiff requests that his conduct report removed from his record, that the Court order a protective custody hearing to take place, and that he be transferred to a prison that is closer to his family visitors.

None of the allegations set forth in Plaintiff's Claim Five state a claim against any of the named defendants. In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Plaintiff mentions an nonparties Officer Moore and the Chief Inspector, but does not offer any allegations upon which the Court could conclude that Defendants were personally involved in any of the incidents about

which he complained.

Moreover, Plaintiff's dissatisfaction with the handling of his administrative grievance fails to state a claim because "there is no inherent constitutional right to an effective grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Finally, Plaintiff's due process claims concerning the prison disciplinary proceedings fail to state a claim of relief. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff's due process claim fails because he has not identified a constitutionally protected liberty interest that the disciplinary proceedings implicated. "Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574, 576 (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)). Rather, "[a]n inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "To determine whether changed conditions are 'atypical and significant,' a reviewing court considers both the duration and the nature of the more restrictive confinement relative to 'prison norms and to the terms of the individual's sentence.'" *Id*. (quoting *Harden–Bey v. Rutter*, 524 F.3d 789, 792–93 (6th Cir. 2008)). Although Plaintiff complains of being transferred to another prison, a mere transfer to

another state prison does not satisfy the "atypical and significant" standard. *See Harbin–Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) ("[A] prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." (internal quotation marks and citations omitted)); *cf. Wilkinson*, 545 U.S. at 222–23 ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) (no due process violation arising from transfer to a maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose")).

For all of these reasons, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Claim Five pursuant to § 1915(e)(2) for failure to state a claim on which relief may be granted.

**F.     Plaintiff's Motion to Amend (ECF No. 7)**

Under Federal Rule of Civil Procedure 15(a)(2), the Court should give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be *futile*.'" *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir.1995)) (emphasis added). A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

The Undersigned concludes that Plaintiff's proposed amendment is futile. Plaintiff's

two-page Motion seeks to amend his Complaint to (1) add nurse daily as a defendant based upon her alleged involvement in failing to provide adequate medical treatment as alleged in Claim Two of his Complaint; (2) amend how he has captioned Claim one to reflect that he is also asserting an equal protection claim premised upon Defendants' alleged discrimination based upon his poverty; and (3) substitute in the name Frank E. Gray for his John Doe Defendant. His first and third proposed amendments are futile because adding a defendant or substituting in the proper name for his John Doe Defendant does not cure the deficiencies outlined above. His second proposed amendment is futile because, as set forth in the discussion of Plaintiff's Claim Four, impoverished prisoners are not a protected class subject to the Equal Protection Clause. *Harris*, 448 U.S. at 323; *Hampton*, 106 F.3d at 1286.

Because Plaintiff's proposed amendments are futile, it is **RECOMMENDED** that his Motion to Amend (ECF No. 7) be **DENIED**.

### III.

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED** for failure to state a claim pursuant to pursuant to § 1915(e)(2), that Plaintiff's Motion to Amend (ECF No. 7) be **DENIED**, and that Plaintiff's Motion for Counsel (ECF No. 2) and Motion for Injunctive Relief (ECF No. 3) be **DENIED AS MOOT**.

The Clerk is **DIRECTED** to send a copy of this order to the Ohio Attorney General's Office, 150 E. Gay St., 16th Floor, Columbus, Ohio 43215.

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE